UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

FRANK LEE HOWARD, III,

       Plaintiff,

v.                                 Case No. 2:05-cv-81
                                    HON. RICHARD ALAN ENSLEN

CORRECTIONAL MEDICAL
SERVICES, et al.,

       Defendants.

_____/

## REPORT AND RECOMMENDATION

       Plaintiff Frank Lee Howard, III, an MDOC inmate, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against several employees of the Michigan Department of Corrections (MDOC). The remaining defendants are Alger Maximum Correctional Facility (LMF) Dr. Abdellatif and Correctional Medical Services (CMS). On April 10, 2006, the court entered partial judgment dismissing defendants DeMasi, Monroe, and Borgerding. Defendants John Doe, Jane Doe and Unknown Powell have not been served with a summons and complaint. Trial is scheduled for March 24, 2008.

       Plaintiff's complaint alleges that while confined at LMF, his ankle was injured on September 18, 2002, by a mentally disturbed inmate who struck plaintiff while running past plaintiff in the gym. Plaintiff had difficulty walking and had to be helped back to his cell by two inmates. Plaintiff placed a medical kite over his cell door, but did not receive any medical assistance that night. The next day, plaintiff's work supervisor and the correctional officer on duty immediately contacted defendant Monroe. Plaintiff was sent to the housing unit where he was visited by defendant Monroe.

Plaintiff complains that defendant Monroe performed only a cursory visual inspection and stated: "You'll be scheduled to see the Doctor when time permits." Plaintiff states that defendant Monroe had no interest in what plaintiff told her. Plaintiff saw Dr. Adbellatif the next day. Dr. Adbellatif noted the "dent in tissue, discoloration and swelling." Dr. Adbellatif told plaintiff that "it will be alright in a couple of weeks." Plaintiff asked for and was given an Ace bandage. On October 16, 2002, plaintiff was transferred to Standish Maximum Correctional Facility (SMF). Plaintiff was examined by Dr. John Urban for high blood pressure. During the examination, plaintiff pulled up his pant leg and showed Dr. Urban his injury. Dr. Urban informed plaintiff that he had an apparent ruptured Achilles tendon and stated "somebody dropped the ball."

Plaintiff had an x-ray of his Achilles tendon. On November 6, 2002, Dr. Divina informed plaintiff that his Achilles tendon was ruptured. Dr. Divina recommended surgery and recommended that plaintiff be placed in an ankle brace and be provided a cane for walking. Plaintiff was informed that on November 8, 2002, defendant Borgerding denied Dr. Divina's order for an ankle brace for plaintiff. However, Dr. Urban attempted to construct a brace out of plaster for plaintiff. CMS approved plaintiff for surgery, but surgery was delayed because Dr. Divina resigned. Plaintiff saw Dr. K.N. Mishra, who recommended reconstructive surgery. Plaintiff initiated a grievance against defendant Powell for his involvement in ignoring plaintiff's serious health care needs. Defendant Powell responded that "[t]he grievant will be scheduled for surgery when it is administratively feasible."

Plaintiff had surgery on May 12, 2003. His cast was removed on July 16, 2003, and plaintiff was instructed to do minor exercises, and walk with crutches with full weight bearing on his leg. Plaintiff was told that he would be seen in six weeks to determine what kind of rehabilitative therapy he would need. Plaintiff alleges that his physical therapy was initially denied. Plaintiff does

indicate that he went to four or five sessions where he pedaled an exercise bike and used a muscle stimulation machine. Plaintiff explains that these therapy sessions did not help. He still has difficulties with his left foot and he has more recently learned that his foot may never be at 100 percent. Plaintiff states that at 247 pounds he has pain from using his left foot and that he can no longer run or jog. Plaintiff asserts that he understood that, with proper medical care, he would be able to regain full use of his leg and foot. Plaintiff states that as a result of the delay and improper treatment, he is permanently impaired. Plaintiff brings claims for intentional infliction of emotional distress, cruel and unusual punishment under the Eighth Amendment, and a violation of the Equal Protection Clause.

Presently before the Court is defendant CMS's and Dr. Abdellatif's Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477

U.S. at 251-52.  Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.  *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Plaintiff has asserted an Eighth Amendment claim against defendants.  Defendants argue that plaintiff did not present a serious medical need and defendants did not act with deliberate indifference.  The Supreme Court has held that deliberate indifference to a prisoner's serious illness or injury states a violation of the Eighth Amendment's "cruel and unusual punishments" clause because it constitutes the "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 103-105 (1976).  However, not every claim by an inmate of inadequate medical treatment rises to the level of an Eighth Amendment violation.

The standard by which such claims are judged involves two elements:  the plaintiff's medical need must be "serious," and the plaintiff must show that the defendants were "deliberately indifferent" to that need.  "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1 (1992); *see also Wilson v. Seiter*, 501 U.S. 294 (1991).

"Deliberate indifference" requires an intentional effort to deny or ignore Plaintiff's need for medical care. *Estelle*,  429 U.S. at 105; *see also*, *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *Harding v. Kuhlmann*, 588 F. Supp. 1315 (S.D.N.Y. 1984), *aff'd*, 762 F.2d 990 (2d Cir. 1985).  Thus injury resulting from mere negligent conduct is insufficient to state an Eighth Amendment claim under Section 1983. *Estelle* 429 U.S. at 105; *see also Daniels v. Williams*, 474

- 4 -

U.S. 327, 333 (1986).  Rather, the official's conduct "must demonstrate deliberateness tantamount to an intent to punish."  *Hicks v. Frey*, 992 F.2d 1450 (6th Cir. 1993).

       Complaints that the doctor did not prescribe a specific medication or should have ordered specific tests or negligently failed to provide adequate medical care may state a claim for malpractice under state law but do not state a claim that an inmate's federal rights have been violated.  *See Williams v. Duckworth*, 598 F. Supp. 9, 13-15 (N.D. Ind. 1983), *aff'd without opinion*, 749 F.2d 34 (7th Cir. 1984).  In *Westlake v. Lucas*, 537 F.2d 857 (6th Cir. 1976), cited in *Estelle*, the Sixth Circuit remarked:

> Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.

*Id*. at 860, n. 5.

       In addition, the Sixth Circuit recently observed:

> [A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.   Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.   In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.   It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

*Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. at 105-06).

       Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim.  *Sanderfer v. Nichols*, 62 F.3d 151, 154-155 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996).  This is so even if the misdiagnosis results

in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. April 4, 1997).

The Sixth Circuit has held that failure to check a prisoner's medical history before treating him does not necessarily rise to the level of "deliberate indifference" for purposes of an Eighth Amendment violation. *Sanderfer*, at 154-155 (1995).

> The Supreme Court recently clarified the definition of deliberate indifference in the Eighth Amendment context by equating it with criminal recklessness, which requires a subjective showing that the defendant was aware of the risk of harm. *Farmer v. Brennan*, 114 S. Ct. 1970, 1979 (1994). Deliberate indifference, the Court held, requires that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*; *Brooks v. Celeste*, 39 F.3d 125, 128-29 (6th Cir. 1994). The *Farmer* Court added that "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if harm ultimately was not averted. *Farmer*, 114 S. Ct. at 1982-83.

*Id.* As the court in *Estelle v. Gamble* explained, medical malpractice does not become a constitutional violation merely because the victim is a prisoner. *Id.* at 106.

Plaintiff injured his Achilles tendon on September 18, 2002, when he was struck by another inmate in the ankle. Plaintiff was assisted back to his cell. He placed a medical kite on his cell door and was seen by Dr. Abdellatif the next day. Plaintiff has alleged that he had a big purple bruise and a dent in his leg. Plaintiff informed Dr. Abdellatif that it felt like his leg and foot were not receiving any messages from his brain. Dr. Abdellatif told plaintiff that it would be better in a couple of weeks and approved plaintiff for an ACE bandage. On October 16, 2002, plaintiff was transferred to SMF. Dr. Urban examined plaintiff on October 18, 2002, for high blood pressure. When plaintiff pulled up his pant leg to show his leg to Dr. Urban, Dr. Urban immediately informed plaintiff of the rupture in his Achilles tendon, and explained that normally an Achilles rupture should

- 6 -

be treated within 24 hours.  An x-ray on October 21, 2002, confirmed damage to the Achilles tendon. Plaintiff was examined by Dr. Divina on November 6, 2002, who recommended surgery, an ankle brace, and a cane for walking.  Plaintiff was informed that the medical director for CMS denied the ankle brace.  Dr. Urban attempted to construct a brace out of plaster.  By December 2002, CMS approved the surgery, but placed it on hold due to the retirement of Dr. Divina.  On February 12, 2003, plaintiff was examined by Dr. Mishra who recommended surgery.  Plaintiff alleges that after several delays he finally had surgery on May 12, 2003.  Plaintiff was placed in a cast which was removed on July 16, 2003.  Plaintiff was told that he would be examined in six weeks to determine what type of rehabilitative therapy would be necessary.  It appears that CMS, at least initially, denied follow-up with plaintiff's surgeon and instead informed Plaintiff that he would be seen by an on-site-doctor.  Plaintiff then went to four or five therapy sessions between January and February 2004.  On February 11, 2004, plaintiff was examined by Dr. Mishra.  Plaintiff claims that the unnecessary delays caused permanent injury.

Defendants argue that their actions did not cause plaintiff to suffer a worse injury, so his injury should not be considered serious.  Plaintiff has shown that Dr. Abdellatif  failed to properly treat his condition.  Dr. Abdellatif failed to determine that plaintiff ruptured his Achilles tendon.  Whether Dr. Abdellatif acted with deliberate indifference in "dropping the ball," is a question of fact in this case.  As soon as plaintiff was transferred to a new prison he was examined by Dr. Urban who immediately diagnosed plaintiff with a rupture in his Achilles tendon.  Dr. Urban indicated that plaintiff's injury was now considered an old wound and that the window of opportunity for proper treatment had now passed.  Plaintiff has presented sufficient facts from which a jury could conclude that Dr. Abdellatif's failure to properly treat him at the early stages of injury caused permanent damage to plaintiff's Achilles tendon.  Further, in the opinion of the undersigned,

plaintiff has shown sufficient facts that could establish that the policies of defendant CMS could have deliberately caused or contributed to an unnecessary delay of plaintiff's treatment resulting in a permanent and serious injury.

Defendants have also filed a motion to dismiss for failure to prosecute, arguing that plaintiff's failure to respond to the motion for summary judgment requires dismissal.  Plaintiff has filed a response to the motion.  Defendant's motion is without merit.

Accordingly, it is recommended that defendants' motion for summary judgment (Docket #95) be denied and defendants' motion to dismiss for failure to prosecute (Docket #110) be denied.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).


 /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:  January 18, 2008