UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

FRANK L. HOWARD,

      Plaintiff,

                               Case Number 2:05-cv-81

v.

                               Hon. Janet T. Neff

CORRECTIONAL MEDICAL SERVICES, INC.
AND BADAWI ABDELLATIF M.D.,

      Defendants,

_____/

| | |
|---|---|
| Edward P. Perdue (P55888) | Ronald W. Chapman (P37603) |
| Julie Westra (P71388) | Brian J. Richtarcik (P49390) |
| DICKINSON WRIGHT PLLC | Chapman and Associates, P.C. |
| Attorneys for Plaintiff | Attorneys for Defendants Dr. Abdellatif and |
| 200 Ottawa Ave., N.W., Suite 900 | Correctional Medical Services, Only |
| Grand Rapids, MI 49503 | 40950 North Woodward Ave., Suite 120 |
| (616) 458-1300 / (616) 458-6753 fax | Bloomfield Hills, MI 48304 |
| | (248) 644-6326 / (248) 644-6324 fax |

**BRIEF IN SUPPORT OF MOTION *IN LIMINE* REGARDING USE OF DEPOSITION
TESTIMONY DESIGNATIONS**

## I.    INTRODUCTION

Plaintiff Frank L. Howard files this motion *in limine* to settle objections to his intended use of the deposition testimony designations of Defendant Abdellatif and Defendant Correctional Medical Services, Inc.'s ("CMS") party representatives at trial.  Mr. Howard has properly listed those designations in the Court's Final Pretrial Order, as was required and allowed by Judge Enslen's original Case Management Order.  These designations, for Defendant Dr. Abdellatif, Defendant CMS' Rule 30(b)(6) witness Dr. Hutchinson and CMS witness and agent Dr. John Urban have been properly identified and set forth at pages 14-24 of the *Final Pretrial Order* dated June 19, 2008.  Notably, there have been no counter-designations or objections filed by the filing deadline for the *Proposed Final Pretrial Order* (filed on June 12, 2008), or by the final pretrial conference itself (held on June 19, 2008).

Mr. Howard intends to use those designations in the following manner:

a) publication by posting on the electronic evidence screen, through reference/discussion during opening and closing statements;

b) publication by posting on the electronic evidence screen,  through reading and through normal impeachment techniques during the direct examination of Defendants' hostile witnesses;

c)    publication  by  posting  on  the  electronic  evidence  screen,  through  normal impeachment techniques during cross examination of any of Defendants' witnesses;

d) at Plaintiff's discretion, publication by posting on the electronic evidence screen, through a reading to the jury into the record at the close of Plaintiff's proofs; and

e) by placing a copy of the designated deposition testimony transcript pages in the exhibit books.

As will be demonstrated below such deposition designations of the individual Defendant (Dr. Abdellatif), Defendant CMS' Rule 30(b)(6) witness (Dr. Hutchinson), and another current

CMS physician and witness (Dr. Urban) are non-hearsay admissions of a party opponent under Federal Rule of Evidence ("FRE") 801(d)(2).  As substantive evidence, Mr. Howard is permitted to use these designations for all purposes in which evidence may be used at trial, including the specific uses set forth above.  Fed.R.Civ.P 32(a)(3).

Finally, Plaintiff objects to Defendants' stated intention to counter-designate additional deposition testimony at trial and/or to restate objections that were made during the depositions at trial.  Plaintiff's designations were given to Defendants well in advance of the June 12, 2008 deadline for filing of the proposed pretrial order.  Counter-designations should have been made prior to the submission of the proposed pretrial order or at a minimum before the pretrial conference.  Objections to Plaintiff's designations should have been made in the form of a motion *in limine* by June 12th, or at a minimum, by the date of the pretrial conference.  To allow Defendants to interpose objections and counter-designations at trial will prejudice the Plaintiff, would circumvent the deadlines set forth in the Case Management Order without a showing of good cause, and will serve no other purpose than to purposefully interrupt the Plaintiff's organized presentation of evidence.

## II.    LEGAL STANDARD

Deposition testimony is considered a "statement" under FRE 801 of "an oral or written assertion."  As such, deposition testimony can be admitted as an admission of a party-opponent under FRE 801(d)(2).  A statement is an admission of a party-opponent, and thus non-hearsay, when:

> the statement is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity or (B) a statement of which the party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship. [FRE 801(d)(2).]

If a statement in a deposition transcript is admissible under the Federal Rules of Evidence, it is "not excludable on the grounds that the statement could also have been presented in the form of live oral testimony." *Coleman v. Wilson*, 912 F.Supp 1282, 1295 (E.D. Cal. 1995).

### III.  LEGAL DISCUSSION

**A.    The Three Witnesses Whose Deposition Testimony Is At Issue Are Individual or Representative Party-Opponents Under FRE 801**

**1.    Dr. Badawi Abdellatif's Deposition Testimony is Admissible Because it is Offered as an Admission by a Party-Opponent**

Under FRE 801(d)(2)(A), a statement is an admission of a party-opponent, and thus non-hearsay, when the statement is offered against a party and is "the party's own statement, in either an individual or a representative capacity."  Dr. Abdellatif is a party in his individual capacity in these proceedings.  Therefore, his own statements during his deposition are not hearsay and are admissible.

**2.    Dr. Craig Hutchinson's Deposition Testimony is Admissible Because it is Offered as an Admission by a Party-Opponent and the Statement Was Made By CMS' Rule 30(b)(6) Witness**

When a deposition notice is served on a party pursuant to Fed. R. Civ. P. 30(b)(6), naming a corporation, partnership, or association as the deponent, the organization is required to designate appropriate persons who consent to testify on its behalf.  Rule 30(b)(6) states:

(6) Notice or Subpoena Directed to an Organization. In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. **The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf**; and it may set out the matters on which each person designated will testify. A subpoena must advise a nonparty organization of its duty to make this designation. The persons designated must testify about information known or reasonably available to the

organization. This paragraph (6) does not preclude a deposition by any other procedure allowed by these rules. [Emphasis added.]

Once a corporation has designated a person or persons to testify on its behalf, then the representative's "testimony given at a Rule 30(b)(6) deposition is evidence which, like any other deposition testimony, can be contradicted and used for impeachment purposes." *A.I. Credit Corp. v. Legion Insurance Co.*, 265 F.3d 630, 637 (7th Cir. 2001), quoting *Indus. Hard Chrome, Ltd. v. Hetran, Inc.*, 92 F.Supp.2d 786, 791 (N.D. Ill. 2000). This concept is stated explicitly in Fed.R.Civ.P. 32(a)(3), which states "an adverse party may use for any purpose the deposition of a party or anyone who, when deposed, was the party's officer, **director**, managing agent, **or designee under Rule 30(b)(6)** or 31(a)(4)." (Emphasis added). Moreover, as the advisory committee notes explain "the [Rule 30(b)(6)] deposition is in substance and effect that of the corporation or other organization which is a party."

In the present case, CMS designated Dr. Hutchinson, who was CMS' statewide director in Michigan.

> Q. . . we're here today for the Rule 30(b)(6) deposition of a corporate representative of Correctional Medical Services. Do you understand that?
> A.     Yes.
> Q.     And are you that representative, sir?
> A.     Yes.
> Q.     All right. And have you reviewed the deposition notice for today, which identifies certain topics that were supposed to be covered by the CMS corporate representative?
> A.     I've reviewed it, yes.
> Q.     And you feel you're qualified to discuss those issues?
> A.     Yes.
> Q.     All right. Doctor, what is your current employment?
> A.     . . . [a]t the time relevant to this case, I was the Statewide Medical Director for CMS in Michigan. That's why they thought I was appropriate for the purposes of this deposition. [Hutchinson Dep. Tr., pp. 4-5.]

Therefore, under FRE 801(d)(2)(C), a statement is an admission of a party-opponent, and thus non-hearsay, when "the statement is offered against a party and is a statement by a person authorized by the party to make a statement concerning the subject."

> **3.    Dr. John Urban's Deposition Testimony is Admissible Because it is Offered as an Admission by a Party-Opponent, CMS Authorized Dr. Urban's Statement and Dr. Urban is Their Agent.**

Dr. Urban made the statement that someone "dropped the ball" in treating Mr. Howard's Achilles tendon injury.    In addition, Dr. Urban admitted this statement and made other statements at his deposition while an agent or servant of CMS, and they concern the scope of this relationship.    FRE 802(d)(2)(D).    Thus, Dr. Urban's testimony can be classified as a party opponent admission.

While FRE 801(d)(2)(D) does not define "agent," the committee notes of the 1972 Proposed Rules make it clear that "agent" is being used synonymously with "employee" and that the test of whether a statement is admissible as a party opponent admission hinges on whether the admission was made by the employee while acting within the scope of his employment:

> **(D)** The tradition has been to test the admissibility of statements by agents, as admissions, by applying the usual test of agency. Was the admission made by the agent acting in the scope of his employment? Since few principals employ agents for the purpose of making damaging statements, the usual result was exclusion of the statement. Dissatisfaction with this loss of valuable and helpful evidence has been increasing. A substantial trend favors admitting statements related to a matter within the scope of the agency or employment. [Committee Notes, FRE 801, 1972 Proposed Rules.]

Moreover, United States District Courts sitting in Michigan have applied Michigan state law in determining whether an agency relationship exists. See *Lopez v. Union Carbide Corp.*, 83 F.Supp.2d 880, 886 (E.D. Mich. 2000).  The Michigan Court of Appeals has repeatedly relied on an "economic reality test" to determine whether a person is classified as an employee or an

5

independent contractor. *Dewitt Building Co. v. Auto-Owners Insurance Co.*, 2003 WL 21362804
(2003 Mich. App.)(attached as **Exhibit A**)(citing *Meridian Mut. Ins. Co. v. WYPIJ*, 226
Mich.App. 276, 278-79; 573 N.W.2d 320, 322-23 (1997)).   The court in *Dewitt Building Co.*
stated factors relevant to the economic reality test:

> (1) control of the worker's duties; (2) payment of wages; (3) the right to hire, fire,
> and discipline; (4) performance of the duties toward the accomplishment of a
> common goal; (5) whether the worker provides his own equipment and materials;
> and (6) whether the worker holds himself out to the public as ready and able to
> perform certain tasks.  The totality of the circumstances must be considered, and
> no single factor controls. *Id.*

The economic reality test "properly focuses on the characteristics of an employer-employee
relationship, regardless of the context in which is applied." *Meridian Mut. Ins. Co.*, 226
Mich.App. at 278-79.

In this case, Defendants allege that the business relationship between Dr. Urban and CMS
is one of an independent contractor rather than that of an employee.  However, the deposition
testimony in the record below makes it abundantly clear that all the factors in the "economic
reality test" weigh heavily in favor of a finding that Dr. Urban is a CMS agent.

First, CMS retains control over Dr. Urban's duties:

> Q.     What do you understand their position to be?
> A.     I know that there's certain physicians, if you want to get special
> procedures or referrals for certain diagnostics tests, you have to apply to CMS,
> and they overlook – overlook that.
> Q.     Okay.  And so they dictate, then, whether or not you can perform certain
> procedures or whether certain accommodations can be made?
> A.     They, I would say, give us more – either authorization or guidelines to
> follow in order to either A, obtain certain procedures, specialties or diagnostic
> studies, or help us or assist us in managing the case in certain aspects. [Urban
> Dep. Tr., p. 17.]

---

> Q.     If you want to send a patient out for an MRI is there a CMS procedure or
> policy for that?
> A.     We – yes, we have to apply thorough CMS.

Q.      How does that application process work, and how long does it take?
A.      Again, we'd have to fill out a 407 and list your diagnosis, your findings, and apply for that?
Q.      Where do you send it to, where do you send the 407 form?
A.      Those all go to, I believe the CMS office in the Lansing area.
Q.      And then there is a doctor there that reviews that request and makes a decision about whether it's going to be approved or not?
A.      The review the case, yes, like insurance companies do. [Urban Dep. Tr., p. 38.]

Second, Dr. Urban stated in his deposition that his wages are paid by CMS:

Q.      All right. And who are you paid by?
*A.      CMS.* [Urban Dep. Tr., p. 14.]


Third, CMS retains the right to hire, fire, and discipline Dr. Urban by offering him employment and consistently monitoring his performance.

Q.      Looking back to when you first applied for work for CMS, do you recall if there were certain criteria or standards that you had to meet to become employed by that company?
A.      I – I know they would not hire anybody that's been in – how would you say, professional trouble or had professional problems. [Urban Dep. Tr., p. 18.]

_____

Q.      Do you report to anybody at CMS?
A.      Yes.
Q.      Who?
A.      It depends what the issue is.
Q.      Well, is there anybody that monitors your performance from time to time at CMS?
A.      I believe they're individuals that see – monitor how many patients we see, how many chart reviews we do, our hours, yes.
Q.      And where are those individuals located?
A.      They, I believe, are at the – either Okemos or Lansing, I'm not sure which city they are in, but they are either in Okemos or Lansing.
Q.      And those people that are reviewing your work and performance, are they employees of CMS?
*A.      I would believe they are.* [Urban Dep. Tr., p. 15; emphasis added.]

Fourth, Dr. Urban performs his duties toward the accomplishment of a common goal, that is, the completion of CMS' projects by providing health care services to the inmate population at the Standish Correctional Facility:

> Q.    Let's just start with, what is your title at the Standish facility?
> A.    I'm what they call the state medical officer or physician, or state medical physician, so MSP.
> Q.    I mean, do you have specialists that are doctors working here for CMS or is everybody, you know, the same rank and classification?
> A.    As a MSP I am a physician that sees patients directly at the facility on a daily basis. [Urban Dep. Tr., p. 9.]

Additionally, CMS publicly represents on its website that its physicians are part of its corporate body:

> Correctional Medical Services, Inc. (CMS) provides an extensive range of healthcare and administrative services to our correctional institution partners. Serving prisons and jails with populations ranging from 15 to over 15,000 inmates, our medical, dental and behavioral health services are designed to address the multiple health challenges of the incarcerated population. **Our administrative services allow our physicians**, nurses and other health specialists to deliver services with industry-leading efficiency and effectiveness. [http://www.cmsstl.com/about-us/services.html, emphasis added.] (Attached as **Exhibit B**).

Fifth, CMS provides the necessary equipment and materials to Dr. Urban at the Standish correctional facility:

> Q.    Do you have – is there a medical bay here [at Standish] or medical facility here [Standish] that you work out of?
> A.    Yes, we have a clinic here [at Standish]. [Urban Dep. Tr., p. 19.]
> Q.    And going back a minute to the type of medical treatises that are available in this facility [Standish], is there a standard policy for what medical books and medical treatises and policy manuals that each clinic has to have within the Michigan Department of Corrections?
> A.    We have certain state policies on hand that are available.  As for the medical books or medical library, I am not sure whether there's a standard of certain books they have.
> Q.    Have you ever personally stocked the medical library here at Standish or is that something was already set up?
> A.    It was set up. [Urban Dep. Tr., p. 21.]
> Do you have x-ray facilities here at the clinic [Standish]?

8

A.     We have x-rays here, so we utilize them frequently because they're so readily available. [Urban Dep. Tr., p. 36.]

Sixth, Dr. Urban consistently holds himself out to the public as able to perform certain tasks.  In this instance, Dr. Urban holds himself out as a qualified physician:

Q.     And what kind of medical degree did you graduate with; is there, I mean, do you have your D.O.?
A.     It's a doctorate of osteopathic medicine.
Q.     All right. And for the record, what's the difference between an M.D. and a D.O.?
A.     Oh, the osteopaths try to use more of a holistic approach.  Not only do we practice strictly medicine for surgery, also do spinal manipulation, try to incorporate the musculoskeletal, nervous system into our diagnostic treatment . . . . [Urban Dep. Tr., p. 7.]

Therefore, upon examination of the totality of the circumstances based on the "economic reality test," there are compelling factors that indicate that Dr. Urban's relationship with CMS is characterized as that of an agent (i.e., master and servant).  As such, Dr. Urban's deposition testimony can be admitted as an admission of a party-opponent under FRE 801(d)(2)(C) and 801(d)(2)(D).

In addition, under FRE 801(d)(2)(C), Dr. Urban's deposition testimony is "a statement by a person authorized by the party to make a statement concerning the subject."  Defendant CMS authorized Dr. Urban to make a statement concerning Mr. Howard's injuries while at Standish by naming Dr. Urban as one of their lay and expert witnesses and they make it clear he is acting "Care of" CMS. [1]  Furthermore, Defendant CMS' counsel, Mr. Richtarcik, appeared on behalf of Dr. Urban at his deposition.[2]

Under FRE 801(d)(2)(D), Dr. Urban's deposition testimony is "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during

_____

[1] Final Pretrial Order June 19, 2008, Pages 11, 13-14.  See page 11 ("**John C. Urban, M.D.** – (will be called, expected to testify in person) **c/o CMS**, 3496 Lake Lansing Rd., Ste. 100, Lansing, MI 48823.  **Employed at Standish Correctional Facility**, 4713 W. M-61, Standish, MI 48658." (Emphasis added).
[2] *Id.* Page 2.

the existence of the relationship."   Dr. Urban's deposition testimony was made as a CMS's employee concerning Mr. Howard's injuries while at the Standish correctional facility.

**B.    Federal Case Law and the Federal Rules of Civil Procedure Support Plaintiff's Proposed Uses of Party-Opponent Deposition Testimony**

    **1.    Plaintiff May Publish Party-Opponent Deposition Testimony Through Publication and Through Reference During Opening and Closing Statements**

The court has wide discretion as to the matters addressed and the facts presented to the jury.   Moreover, interpretations of FRE 801(d)(2)(d) consistently hold that out of court statements by employees or other agents of a party are admissible.  *See US v. Busch et al*, 758 F.2d 1394 (10th Cir. 1985) (court properly admitted as party admissions tape-recorded statements of Defendants as well as transcripts of statements); *Marquis Theatre Corp. v. Condado Mini Cinema*, 846 F.2d 86 (1st Cir. 1988) (court properly admitted transcripts of Defendant's sworn bankruptcy proceeding testimony in shareholder derivative suit); *Meriwether v. Coughlin*, 879 F.2d 1037 (2nd Cir. 1989) (court properly admitted, "as a party admission," evidence of Defendant's testimony in a prior proceeding); *US v. Ballard*, 779 F.2d 287 (5th Cir. 1986) (court properly admitted as party admission Defendant's civil deposition testimony in criminal case).

As demonstrated above in Section B, the deposition testimony that Plaintiff Howard wishes to utilize at trial satisfies the requirements of Fed.R.Civ.P. 32 and is not hearsay under FRE 801.  Thus, Plaintiff Howard may reference and discuss all designated deposition testimony and publish it through the electronic evidence screen during opening and closing statements.

    **2.    Plaintiff May Publish Party Opponent Deposition Testimony Through Publication and Through Normal Impeachment Techniques**

Fed.R.Civ.P. 32(a)(2) states that "any party may use a deposition to contradict or impeach the testimony given by the deponent as a witness, or for any other purpose allowed by the Federal Rules of Evidence."  Thus, pursuant to Fed.R.Civ.P. 32(a)(2), Plaintiff Howard should be allowed to use all designated deposition testimony while impeaching Defendants' hostile witness and during direct examination and while impeaching any of Defendants' witnesses during cross examination.

> **3.     Dr. Hutchinson's and Dr. Urban's Deposition Testimony May be Used For Any Purpose Under Fed. R. Civ. P. 32(a)(3) Including the Reading to the Jury at the Close of Plaintiff's Proofs**

Fed.R.Civ.P. 32(a)(3) states "[a]n adverse party may use **for any purpose** the deposition of a party or anyone who, when deposed, was the party's officer, director, managing agent, or designee under rule 30(b)(6) or 31(a)(4)." (Emphasis added).  The 1970 advisory committee notes explain that the:

> addition in Rule 32(a)(2) provides for use of a deposition of a person designated by a corporation or other organization, which is a party, to testify on its behalf. This complements the new procedure for taking the deposition of a corporation or other organization provided in Rules 30(b)(6) and 31(a). The addition is appropriate, since the deposition is in substance and effect that of the corporation or other organization which is a party.

Therefore, Plaintiff Howard may use, for any purpose, the deposition testimony in question at trial, including publication through posting on the electronic evidence screen, through normal impeachment techniques, through reference/discussion during opening statements and through reading to the jury at the close of Plaintiff's proofs.

> **4.     The Jury May be Permitted to Take a Copy of the Designated Deposition Testimony Transcript to the Jury Deliberation Room**

A jury may be permitted to take to the jury room, as an aid in its deliberations and in the absence of objection, documents and exhibits which have been admitted into evidence and which

help to clarify the issues. *Metcalf v. Waterbury*, 231 N.W.2d 437, 440 (Mich. Ct. App. 1975) ("in light of counsel's failure to object and in view of fact that exhibit had been introduced into evidence and jury was fully apprised of its contents, there was no abuse of discretion in allowing exhibit to be examined by jury in jury room"). "The general rule is that it is within the discretion of the trial court to allow exhibits to be taken into the jury room." *Carreras v. Honeggers & Co.*, 68 Mich.App. 716, 721-23; 244 N.W.2d 10, 13-14 (1976)(citing *Silverstone v. London Assurance Corp.*, 187 Mich. 333, 342; 153 N.W. 802 (1915)). See also *Metcalf v. Waterbury*, 60 Mich.App. 553,558; 231 N.W.2d 437, 440 (1975)(same).

In *Carreras*, an economist testified as to the potential loss of income on the part of the plaintiff. His projections as to the loss of earnings were based on the various possible future income levels of the plaintiff. All this information was summarized on two charts. The *Carreras* court stated that "[g]iven the complex nature of the expert's testimony and given that the charts were properly founded on his testimony, we cannot find that the trial court abused its discretion in allowing the jury to take the charts into the jury room for their deliberations." *Id.* at 13-14.

Similarly, in the present case due to the complex nature of the physicians' testimony, the complicated vernacular involved and the sheer volume of information that will be presented to the jury, this court should allow the jury take the deposition testimony designations into the jury room as part of the jury's exhibit book.

### C.   Defendants Should Not Be Allowed to Make Additional Counter-Designations or Objections to This Designated Deposition Testimony

Defendants should not be allowed to counter-designate additional deposition testimony at trial and/or to restate objections that were made during the depositions at trial. To allow Defendants to interpose objections and counter-designations at trial will prejudice the Plaintiff

and would circumvent the deadlines set forth in the Case Management Order without a showing of good cause.  Defendants' objections will serve no other purpose than to purposefully interrupt the Plaintiff's organized presentation of evidence.

Fed.R.Civ.P. 16(b)(4) clearly states, "[a] schedule may be modified **only for good cause** and with the judge's consent." (Emphasis added).  In *Michalik v. Huron and Eastern Railroad Co.*, 2004 WL 1765519 (2004 E.D. Mich.) (attached as **Exhibit E**), the court held that under Fed. R. Civ. P. 16 "good cause" had not been shown to relax the deadline.  In *Michalik* the court explained that "[o]nce entered, '[a] schedule shall not be modified except upon a showing of good cause and by leave of the district judge.'" *Michalik*, 2004 WL 1765519 at 1; Fed. R. Civ. P. 16(b); *see also Leary v. Daeschener*, 349 F.3d 888, 906 (6th Cir. 2003).  "Moreover, a court may change a schedule 'only if it cannot reasonably be met despite the diligence of the party seeking the extension.'" *Id.* quoting *Leary*, 349 F.3d at 906 (relying upon the 1983 advisory committee's notes on Fed.R.Civ.P. 16).  Stated another way, "the primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." *Id.* citing *Leary*, 349 F.3d at 906.

In this case, Plaintiff's designations were given to Defendants well in advance of the June 12, 2008 deadline for filing of the proposed pretrial order.  Counter-designations should have been made prior to the submission of the proposed pretrial order or at a minimum before the pretrial conference on June 19, 2008.  Any objections should have been made in the form of a motion *in limine* by June 12, 2008, or at a minimum, by the date of the pretrial conference on June 19, 2008.  Moreover, Defendants have not only failed to show good cause, but they have not even moved for a modification of those deadlines.  In light of the circumstances, where Defendants had the Case Management Order for months and had the Plaintiff's designations well

in advance of the pretrial filing deadline and the pretrial conference, it is impossible for "good cause" to exist. As such, Defendants should be barred from counter-designating additional deposition testimony or objecting to the designations at trial.

## IV. CONCLUSION

The deposition testimony designations should be admitted because the three physicians whose deposition testimony is at issue are either individual or representative party-opponents under FRE 801 such that their deposition designations are non-hearsay admissions. Furthermore, federal case law and the Federal Rules of Civil Procedure support Plaintiff's proposed uses of this party-opponent deposition testimony. As substantive evidence, Plaintiff is permitted to use these designations for all purposes for which evidence may be used at trial. Under Fed.R.Civ.P. 32, deposition testimony may be used to contradict or impeach the testimony given by the deponent as a witness, or for any other purpose allowed by the Federal Rules of Evidence. In addition, at the discretion of the Court, the jury may be permitted to take to the jury room documents and exhibits which have been admitted into evidence. Due to the complex nature of the deposition testimony at issue, the complicated vernacular involved and the sheer volume of the information, the Court should allow the jury to take the deposition testimony designations into the jury room as part of the jury's exhibit book. Lastly, Defendants' proposed objections and counter-designations are barred by the deadlines of the Case Management Order and will serve no purpose other than to disrupt and interrupt Plaintiff's presentation of proofs.

For the reasons stated herein, Plaintiff respectfully requests that this Honorable Court **GRANT** its Motion and enter an Order allowing the use of deposition testimony designations at trial.

Respectfully Submitted,

DICKINSON WRIGHT PLLC
Attorneys for Frank L. Howard.


By:   /s/ Edward P. Perdue
        Edward P. Perdue (P55888)
        Julie Westra (P71388)
200 Ottawa NW, Suite 900
Grand Rapids, MI  49503
(616) 458-1300
eperdue@dickinsonwright.com

Dated:  June 27, 2008

GRAPIDS 99997-846 222471v1