UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

FRANK L. HOWARD,

    Plaintiff,                                           Case No. 2:05-cv-81

v                                                   HON. JANET T. NEFF

BADAWI ABDELLATIF, M.D., et al.,

    Defendants.
_____/

## **OPINION**

Plaintiff is a prison inmate who was injured when another inmate struck him in the leg. He alleges that the treatment he received for his injury was constitutionally deficient, and his case is scheduled for trial next month. Pending before the Court is plaintiff's Motion in Limine Regarding Use of Deposition Testimony Designations. Defendants filed a response. On leave granted, plaintiff filed a reply.

### I.  BACKGROUND

On June 12, 2008, in compliance with the Case Management Order issued by then presiding Judge Richard Enslen, the parties filed a proposed Final Pre-Trial Order. In the proposed Final Pre-Trial Order, plaintiff identified approximately 150 deposition excerpts that he designated for use at trial, subject to the objections defendants placed on the record during the depositions. Specifically, plaintiff delineated designations from the depositions of:

    (1)    Defendant Badawi Abdellatif, M.D., whose statements plaintiff argues are admissible as admissions by a party-opponent under FED. R. EVID. 801(d)(2)(A) ("the party's own statement");

  (2)  John C. Urban, M.D., whose statements plaintiff argues are also admissible as admissions by a party-opponent under FED. R. EVID. 801(d)(2)(D) or, alternatively, under FED. R. EVID. 801(d)(2)(C) ("a statement by a person authorized by the party to make a statement concerning the subject"); and

  (3)  Craig Hutchinson, M.D., whose statements plaintiff argues are admissible under FED. R. EVID. 801(d)(2)(C) as statements by a person authorized by the party to make a statement concerning the subject.

Defendants did not counter-designate any deposition testimony in the proposed Final Pre-Trial Order.

  Plaintiff filed the instant motion, outlining the manner in which he proposes to use the depositions at trial and seeking to preclude defense counsel from counter-designating additional deposition testimony and/or restating objections that were made during the depositions.

  Regarding use of the deposition designations at trial, plaintiff indicates that he wants to

  (1)  publish the excerpts on the electronic evidence screen during –

    (a)  opening and closing statements,

    (b)  impeachment during direct examination of defendants' hostile witnesses, and

    (c)  impeachment during cross-examination of defendants' witnesses;

  (2)  read to the jury and/or publish excerpts at the close of plaintiff's proofs; and

  (3)  include a copy of the designated deposition testimony transcript pages in the exhibit book the jury uses during deliberations.

Plaintiff argues that the above uses are permissible under FED. R. CIV. P. 32 ("Using Depositions in Court Proceedings").

In response, defendants object to plaintiff reading Dr. Urban's deposition transcript into evidence where Dr. Urban is ready and available to testify in person. Defendants also argue that Dr. Urban's testimony is hearsay and not admissible as a party admission because he is neither an employee nor an agent of Correctional Medical Services (CMS) but an independent contractor as specified in his "Independent Contractor Physician Agreement" with CMS. Defendants argue that because the contract specifies the character of the employment relationship, application of the economic realities test is unnecessary. However, defendants argue that even if the economic realities test should apply to determine the physician's employment status, application of the factors from the test similarly supports the conclusion that Dr. Urban is an independent contractor. Last, defendants argue that Dr. Urban is a fact witness, not a person authorized by CMS to make a statement concerning the subject within the meaning of the Federal Rules of Evidence.

Defendants object to plaintiff's counsel reading those portions of the depositions of Drs. Hutchinson and Abdellatif to which defense counsel objected. Specifically, defendants delineate twelve objections culled from the deposition of defendant Abdellatif (three concerning a lack of foundation and the remainder concerning the completeness of the excerpt chosen by plaintiff). Defendants delineate sixteen objections culled from the deposition of Dr. Hutchinson (all but four objections concern the completeness of the excerpt chosen by plaintiff).

Regarding plaintiff's proposed uses of the deposition designations at trial, defendants object to this Court permitting plaintiff to include the designated deposition testimony transcript pages in the jury's exhibit book. Defendants apparently concede the other uses. Defendants argue that inclusion in the exhibit book may accord the testimony undue emphasis and may result in the jury viewing the excerpts out of context.

In reply, plaintiff retracted his argument that defendants' objections to the deposition designations are untimely, noting that the Magistrate Judge allowed counsel extra time for asserting objections to the depositions.  However, plaintiff opines that defendants have attempted to "slip in" their untimely counter-designations by labeling them as "objections."

Plaintiff also reiterates the manner in which he thinks application of the economic realities test leads to the finding that Dr. Urban is an "agent" of CMS and therefore the conclusion that his testimony is admissible under FED. R. EVID. 801(d)(2)(D).  Plaintiff opines that defendants have overstated the language of the Urban-CMS employment agreement and overemphasized its importance.

Last, plaintiff addresses many of defendants' specific objections to the designated testimony, concluding that the Court should deny these particular objections.  Plaintiff does not address any of defendants' objections to completeness, apparently conceding these objections.

## II.  ANALYSIS

In light of the parties' various concessions in the briefing of this motion in limine, three issues remain outstanding: the extent to which Dr. Urban's deposition testimony is admissible under the Federal Rules of Evidence, defendants' objections to designated portions of the depositions by Drs. Abdellatif and Hutchinson, and whether plaintiff may include deposition excerpts in the jury exhibit book.

### A.  Dr. Urban

Dr. Urban treated plaintiff for a portion of the time in question in this case.  According to plaintiff, Dr. Urban stated that someone "dropped the ball" in treating plaintiff's Achilles tendon injury and admitted making this statement during his deposition.  Mot. at 5.

Defendants assert that they named Dr. Urban as one of their lay and expert witnesses merely because he is a fact witness to the events of plaintiff's treatment. Accordingly, the Court is not convinced that FED. R. EVID. 801(d)(2)(C) ("a statement by a person authorized by the party to make a statement concerning the subject") is a sound basis for admitting Dr. Urban's statement.

The more difficult analysis is whether Dr. Urban's statements are admissible under FED. R. EVID. 801(d)(2)(D) as statements "by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." The parties dispute the character of Dr. Urban's employment relationship with CMS, not whether his statements concerned and were made during this relationship.

Plaintiff argues that applying the "economic realities test" used by Michigan state courts, *see Meridian Mut. Ins. Co. v. Wypij,* 573 N.W.2d 320, 322 (Mich. Ct. App. 1997), leads to the conclusion that Dr. Urban was an agent of CMS. The economic realities test involves four basic factors: "(1) control of the worker's duties; (2) payment of wages; (3) the right to hire, fire, and discipline; and (4) performance of the duties toward the accomplishment of a common goal." *Meridian, supra.* According to plaintiff, Dr. Urban's deposition testimony indicates that CMS (1) authorized Dr. Urban's case management decisions; (2) paid his wages; (3) retained the right to fire him and review his performance; and (4) worked with him toward their common goal of providing health care services to the inmate population at the Standish Correctional Facility. Mot. at 6-9.

Defendants argue that application of the economic realities test is not necessary because Dr. Urban's "Independent Contractor Physician Agreement" with CMS defines their employment relationship. Nonetheless, defendants argue that application of the factors of the economic realities test leads to the conclusion that Dr. Urban is an independent contractor. Defendants emphasize that

the CMS-Urban contract specifies that (1) CMS "shall not exercise control" over the manner in which Dr. Urban performs medical services; (2) CMS does not withhold taxes from the wages paid to Dr. Urban; (3) Dr. Urban is "responsible for Physician's own actions and decisions;" and (4) Dr. Urban is responsible for providing his own general liability insurance and agrees to indemnify and hold CMS harmless for any claims against CMS arising from his failure to carry such insurance. Resp. at 5.

The parties did not direct the Court's attention to decisions from the Sixth Circuit addressing the admissibility of statements under FED. R. EVID. 801(d)(2)(D). The Court has found one helpful decision addressing the evidentiary question, *Beck v. Haik*, 377 F.3d 624 (6th Cir. 2004). In *Beck,* the estate and the mother of a drowning victim brought a civil rights action against a city, county, and various officials, alleging that the county prevented the victim's rescue by members of a private water rescue organization. The plaintiffs sought the admission of the statements of a risk consultant with the Michigan Municipal Management Authority (a public-entity liability and property insurer), which suggested that the county had affirmatively decided, on financial grounds, to offer only body recovery services, not rescue services. *Id.* at 638. The chief issue was the nature of the declarant's employment relationship with the defendant-county. The defendants in *Beck* stated that the declarant was "simply a consultant, providing risk assessment services as part of the county's agreement with the Michigan Municipal Management Authority." The district court held the letters were inadmissible on the grounds that they were irrelevant and excessively prejudicial. *Id.* at 639.

The Sixth Circuit reversed the district court's judgment and remanded for a new trial. The panel reasoned that even if the defendants' characterization of the employment relationship was accurate, the declarant's statements "still count as 'admissions' under Rule 801(d)(2)(D)." *Id.* at

6

639. The Sixth Circuit reasoned that (1) the statements dealt directly with the subject matter of the Management Authority's contract with the county, and (2) the statements were expressed during the course of that relationship. *Id.*

Acknowledging that there is "little precedent" on the matter, the Sixth Circuit pointed out that courts confronting similar factual situations have tended to hold contractors and advisors to fall within the "agency" relationship contemplated by Rule 801(d)(2)(D). *Beck,* 377 F.3d at 639-40. Specifically, the Court referenced two criminal cases where it held admissible under Rule 801(d)(2)(D) statements by a paid civilian informant to the government and statements by an employee of a professional services company hired by a union fund. *Id.* (cases cited therein).

Hence, in *Beck,* 377 F.3d at 639-40, the Sixth Circuit concluded that it was "compelled" to conclude that the district court should have admitted the consultant's statements. The Sixth Circuit found that the statements were relevant, "if not decisive," inasmuch as the statements addressed the defendant-county's decisions. *Id.*

The Court is not persuaded that defendants' attempt to define its employment relationship in the "Independent Contractor Physician Agreement" with Dr. Urban is outcome determinative of the evidentiary issue before the Court. Dr. Urban's statements may "still count" as admissions under Rule 801(d)(2)(D). His employment status as an independent contractor does not necessarily preclude him from the concomitant role of agent. Here, his statements were expressed during the course of the CMS-Urban relationship and directly address the health care services that CMS -- through Dr. Urban -- provides to the inmate population at the Standish Correctional Facility. This Court is therefore persuaded that FED. R. EVID. 801(d)(2)(D) is a sound basis for admission of Dr. Urban's statements.

B.  Dr. Abdellatif

Dr. Abdellatif is one of the named defendants in this case.  Following the briefing of this motion, there are three remaining objections by defendants to certain testimony in his deposition. Specifically, defendants opine that there was a lack of foundation for plaintiff's two lines of questioning about a "ruptured" Achilles tendon injury (as opposed to merely a "torn" Achilles tendon) and a lack of foundation for plaintiff's question about whether CMS has a policy requiring prisoners to submit a medical "kite."

Defendants' objections are overruled.  Plaintiff references places in the record where his injury was described as a "ruptured" Achilles tendon injury and points out that Dr. Abellatif had no difficulty in understanding or responding to the question.  As for the kite policy question, plaintiff asserts that the witness described what the policy was and that there was no need for the "hyper-technical foundation defense counsel is demanding."

C.  Dr. Hutchinson

Dr. Hutchinson is the statewide director for CMS.  Following the briefing of this motion, there are four remaining objections by defendants to certain testimony in his deposition.  The objections concern defendants' claim that Dr. Hutchinson lacked personal knowledge about the cause, effect and prognosis for an Achilles tendon tear or rupture or any personal knowledge of plaintiff's medical records.

However, as plaintiff points out, CMS designated Dr. Hutchinson as its corporate representative pursuant to FED. R. CIV. P. 30(b)(6) to testify on a wide range of topics, including its "standard operating procedures, treatment standards or other rules which governed the care" of inmate patients" and the "typical and proper method of treating a patient who is seen by physician

within 24-48 hours of suffering a ruptured Achilles tendon." Therefore, these objections are also overruled.

### D.  Jury Exhibit Book

The only proposed use of the deposition designations to which defendants objected during briefing of this motion is plaintiff's proposal to include a copy of the designated deposition testimony transcript pages in the exhibit book the jury uses during deliberations. Plaintiff opines that because of the complex nature of the physicians' testimony, the complicated vernacular involved, and the sheer volume of information that will be presented to the jury, this Court should allow the jury to take the deposition testimony designations into the jury room as part of its exhibit book.

Federal Rule of Civil Procedure 32 does not specifically address whether a transcript excerpt may be an exhibit. The case law cited by the parties indicates that the decision to send transcripts to the jurors for their reference falls within the sound discretion of the trial court. See, e.g., *United States v. Walker,* 1 F.3d 423 (6th Cir. 1993). *See also* MCCORMICK ON EVIDENCE, § 220 ("Exhibits in the Jury Room") ("[W]ritings which are testimonial in nature, such as depositions, dying declarations in writing, etc. are typically not taken in with the jury. Such writings, viewed as simply a different form of testimony, should not be unduly emphasized over oral testimony in the case.").

This Court's preference is for the jury to hear the physicians testify live in open court. At the June 19, 2008 Final Pretrial Conference before the Magistrate Judge, the parties appeared to conclude that plaintiff would call at least Dr. Hutchinson in person at trial. Further, defendants' response to the instant motion provides that plaintiff "continues to indicate that [he] may call both Dr. Abdellatif and Dr. Hutchinson to testify live at trial." Resp. at 19. Because this Court's decision

will rest, at least in part, on whether the physicians testify in open court, the Court denies the motion at this time. Plaintiff may renew the motion at trial, if necessary.

### III.  CONCLUSION

Although this Court's preference is to have the physicians testify live at the jury trial, plaintiff's Motion in Limine Regarding Use of Deposition Testimony Designations is GRANTED to the extent that Dr. Urban's deposition testimony is admissible under FED. R. EVID. 801(d)(2)(D) and defendants' remaining objections to designated portions of the depositions by Drs. Abdellatif and Hutchinson are overruled. As to plaintiff's request to include deposition excerpts in the jury exhibit book, plaintiff's motion is DENIED at this time, without prejudice.

An Order consistent with this Opinion will be entered.


Date: December 23, 2008         /s/ Janet T. Neff
                                JANET T. NEFF
                                United States District Judge

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION


FRANK L. HOWARD,

       Plaintiff,                                Case No. 2:05-cv-81

v                                                    HON. JANET T. NEFF

BADAWI ABDELLATIF, M.D., et al.,

       Defendants.
_____/


## **ORDER**

In accordance with the Opinion entered this date:

**IT IS HEREBY ORDERED** that the Plaintiff's Motion in Limine Regarding Use of Deposition Testimony Designations (Dkt 233) is GRANTED IN PART and DENIED IN PART.


Date: December 23, 2008                                      /s/ Janet T. Neff
                                                                  JANET T. NEFF
                                                                  United States District Judge